J. C. QUEEN v. W. M. DeHART, T. J. FERGUSON, AND T. C. QUEEN.

(Filed 26 February, 1936.)

**1. Appeal and Error B b—**

An appeal will be determined in accordance with the theory of trial in the lower court.

**2. Trial F c—**

The refusal to submit an issue tendered will not be held for error when the issues submitted to the jury, tendered by the same party, are sufficient to embrace every phase of the controversy upon the theory upon which the case was tried.

**3. Judgments L b—Judgment exempting endorser from liability on note held not to bar action against him by payee on original contract.**

In an action on a note by a holder by endorsement one of the makers successfully resisted recovery on the ground that his signature was conditioned upon the signature of another party who had failed to sign the note, and the payee paid the judgment on the note. Thereafter the payee instituted this action, alleging that he had entered into a contract with the three defendants under which he delivered to defendants certain time and checking deposits in a closed bank, defendants agreeing that if the choses in action were accepted and canceled under an agreement for the reopening of the bank in which defendants were interested, defendants would execute to plaintiff their note for the amount of the choses in action, that the bank had reopened, that only two of defendants had executed the note, the subject matter of the first action, and that the original contract had been breached entitling plaintiff to recover the amount stipulated in the contract. *Held:* The judgment in the action on the note will not support a plea of *res judicata* as to the maker successfully resisting recovery on the note, plaintiff's action on the original contract being a claim in a different right, and the defendant failing to sign the note not being a party to the prior action.

**4. Contracts E a—Contract obligating defendant to execute note to plaintiff held breached upon defendant's successfully resisting recovery on the note on the grounds that his signature was conditional.**

Plaintiff delivered to defendants certain time and checking deposits in a closed bank, defendants agreeing that if the choses in action were accepted and canceled under an agreement for the reopening of the bank in which they were interested, they would execute to plaintiff their note for the amount of the choses in action. The bank was reopened and two of defendants executed the note to plaintiff but the third defendant refused to execute the note. One of defendants who had executed the note successfully resisted recovery by a subsequent holder on the ground that his signature was conditioned upon the signing of the note by all three defendants, and plaintiff payee was forced to pay the judgment on the note, and instituted this action on the original contract. *Held:* The defendant successfully resisting recovery on the note breached the original contract, since as to him the note was void under his defense of conditional signature, and the execution of the void note did not discharge his obligation

under the original contract to execute a note to plaintiff upon the accept-
ance and cancellation of the choses in action against the bank, of which
he had obtained the benefit, nor did the failure of one of defendants to
sign the note affect the liability of the other defendants under the original
contract, nor did plaintiff's acceptance of the note in good faith without
intimation that the defendant would resist recovery thereon upon the
defense of conditional signature, constitute a release of liability of such
defendant.

**5. Money Received A c—Under facts of this case, instruction that law
raised in plaintiff's favor an implied promise to pay held not error.**

An instruction to the jury that if plaintiff turned over to defendants
certain choses in action against a bank, and if defendants received said
choses in action and used them for the purposes intended, and never re-
stored same to plaintiff, said choses in action being the consideration of
the contract under which defendants promised to execute a note in plain-
tiff's favor for the amount of the choses in action, that the law would
imply a promise on the part of defendants to pay plaintiff the amount
called for in the contract, although one defendant refused to execute the
note called for in the contract, *is held* without error under the facts of
this case.

**6. Appeal and Error J e—**

An exception to the admission of testimony cannot be sustained when
the party excepting to its admission introduces testimony during the trial
of the same import as that excepted to.

**7. Trial G c—**

A verdict is not complete until accepted by the court, and the court has
the discretionary power upon the coming in of a doubtful verdict to have
the jury again retire and make the verdict clear.

**8. Contracts C b—Conflicting evidence as to agreement of parties for dis-
charge of contract obligation by different method held for jury.**

In this action on a contract, a defendant contended that plaintiff agreed
to release him from the obligation of the contract upon the defendant's
transfer to plaintiff of certain shares of stock in a bank, and that defend-
ant transferred to plaintiff the stock in accordance with the agreement,
and that the other parties to the contract agreed to the release of the
defendant. Defendant's evidence tending to establish the defense was
contradicted by evidence introduced by plaintiff. *Held:* The conflicting
evidence was properly submitted to the jury, and its verdict in plaintiff's
favor is sustained.

**9. Trial E g—**

A charge of the court will be construed as a whole, and an exception
to the charge will not be sustained when the charge, so construed, is not
prejudicial to appellant.

APPEAL by defendants W. M. DeHart and T. J. Ferguson from
*Alley, J.,* and a jury, at July-August Term, 1935, of SWAIN. No error.

This is an action brought by plaintiff against defendants to recover
$3,975.80, including interest, due upon the following contract:

"NORTH CAROLINA—SWAIN COUNTY.

Jan. 2, 1931.

"This is to certify that J. C. Queen is turning over to W. M. DeHart, T. C. Queen and T. J. Ferguson my certificate

November 13-29    $ 900.00
June 5-30          2,255.00
Check               746.10    Amounting to $3,901.10 of Citizens Bank
of Bryson City, N. C., with the understanding that if accepted by the State Corporation Commission on the amount demanded for the reopening of the said bank then the said W. M. DeHart, T. C. Queen & T. J. Ferguson is to give his note due December 20, 1932, with interest if certificate of deposit up to November 21, 1930, at 4%. If not accepted by Corporation Commission then the above is to be returned.

"Witness:

R. G. COFFEY.                    (Signed)    W. M. DeHART,
R. G. COFFEY.                                T. C. QUEEN,
R. G. COFFEY.                                T. J. FERGUSON."

The plaintiff alleges that he complied with the above contract and the bank reopened. The note in controversy, which was given, is as follows:

"$3,975.80.                          Bryson City, N. C., April 3, 1931.

"On December 20, 1932, for value received, we promise to pay to J. C. Queen $3,975.80. Negotiable and payable at Citizens Bank, Bryson City, N. C., The drawers and endorsers of this note severally waive presentment and notice of protest and guarantee its payment any time after maturity without interest.

(Signed)    W. M. DeHART,
            T. C. QUEEN."

The plaintiff endorsed and transferred the note to one Ed. Floyd, who in turn transferred same to one R. E. Andrews, who brought suit on the note. On the trial of the action DeHart denied liability on the grounds that his execution of the note was conditional upon the signing of the same by defendant T. J. Ferguson.

Plaintiff alleged that "Upon a verdict of the jury, sustaining the contentions as to said DeHart, the action was dismissed as against him and judgment rendered against this plaintiff and Ed. Floyd (no service of process having been had on said T. C. Queen), for the amount of said note, and that this plaintiff has been required under said judgment to pay same. That the said defendants, by reason of their failure and

refusal to execute the note to plaintiff, as provided for in their said agreement, and their failure and refusal to pay to said plaintiff on or before 20 December, 1932, the amount provided to be paid under said agreement, breached said contract, to plaintiff's great damage, in the sum of $3,975.80, with interest thereon from 20 December, 1932. That the plaintiff is advised and believes and now avers that the defendants and each of them, by reason of the breach of said contract and their failure and refusal to comply with same, became and are indebted to this plaintiff in the full sum of $3,975.80, together with interest thereon from 20 December, 1932; and this plaintiff further avers that he has made demand for payment of said amount upon the defendants, and each of them, and payment has been refused."

The defendant W. M. DeHart denied the material allegations of the complaint, and alleged as a further defense that "It was further agreed, that before said agreement should become effective and binding upon any of these defendants, that plaintiff would obtain the signatures or execution of a note in said sum signed or executed by all of the defendants; and that should the plaintiff fail to obtain the signatures and execution of said note by any one or more of said defendants, said contract and agreement so entered into should not be valid and binding upon any of the parties to same; that the defendant T. J. Ferguson refused to sign and execute said note, or the plaintiff, at least, failed to obtain the signature and execution of said note by the defendant T. J. Ferguson, which plaintiff alleges was a breach of the agreement herein set out, and of the conditions upon which said contract was executed." He further pleaded estoppel—*res judicata* the judgment in the Andrews action. The judgment in that case says: "It is therefore considered, ordered, and adjudged and decreed that the plaintiff R. E. Andrews have and recover nothing against the defendant W. M. DeHart in this cause."

The defendant DeHart also alleged as a further defense: "That if said contract and note had been completed and executed as agreed and made valid, then and in that event this defendant would be and would have been liable to the plaintiff for only one-third of the amount claimed, for the reason that as part of said agreement it was agreed by and between the plaintiff and the defendants, who signed said paper writing set out in the pleadings, that each party signing said contract was to be liable to the plaintiff for only one-third of the amount named in said contract, and no more, and this defendant says and alleges, as heretofore set out, that he is not liable to the plaintiff in any sum and does not owe plaintiff anything, but in the event that it should be found that this defendant is indebted to the plaintiff in any sum, defendant is only indebted to plaintiff in the sum of one-third of the amount mentioned and set out in said paper writing, copied and described in the pleadings."

14—209

The defendant T. J. Ferguson answered, denying the material allegations of the complaint, and as a further defense alleged that he turned over to plaintiff, with the consent of defendants T. C. Queen and W. M. DeHart, 5 shares of stock in the Citizens Bank of Bryson City, N. C., and plaintiff released him from any liability on the contract.

The issues submitted to the jury and their answers thereto succinctly show the controversy, which are as follows:

"1. Did the defendants execute the contract in writing, dated 2 January, 1931, as alleged in the complaint? Ans.: 'Yes.'

"2. Did the plaintiff and the defendants, at the time of the execution of said contract in writing, enter into a supplementary oral contract under the terms of which it was agreed that the said written contract should not be binding and effectual, unless and until all the defendants executed and delivered to the plaintiff their note for the amount called for by said written contract, as alleged by the defendants? Ans.: 'No.'

"3. Did the plaintiff and the defendants, at the time of the execution of said written contract, enter into a supplementary oral contract under the terms of which it was agreed that the liability of each of the defendants should be limited to one-third of the amount called for by said written contract, as alleged by the defendants W. M. DeHart and T. J. Ferguson? Ans.: 'Yes.'

"4. Did the plaintiff and the defendant T. J. Ferguson enter into an oral contract under the terms of which it was agreed that the said Ferguson should be released from his obligation under said contract upon the delivery to the plaintiff of five shares of stock in the Citizens Bank and borrowing of $500.00 to be used by J. R. Jenkins in the opening of said bank, as alleged by the defendant T. J. Ferguson? Ans.: 'No.'

"5. Did the defendant W. M. DeHart commit a breach of said contract, as alleged in the complaint? Ans.: 'Yes.'

"6. What amount, if anything, is the plaintiff entitled to recover of the defendant W. M. DeHart? Ans.: '$1,325.27, with interest.'

"7. Did the defendant T. J. Ferguson commit a breach of said contract, as alleged in the complaint? Ans.: 'Yes.'

"8. What amount, if anything, is the plaintiff entitled to recover of the defendant T. J. Ferguson? Ans.: '$1,325.27, with interest.' "

Judgment was rendered in the court below on the verdict. The defendants made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*I. C. Crawford and Black & Whitaker for plaintiff.*
*Edwards & Leatherwood for W. M. DeHart.*
*B. C. Jones for T. J. Ferguson.*

CLARKSON, J.　At the close of plaintiff's evidence and at the close of all the evidence the defendants W. M. DeHart and T. J. Ferguson, in the court below, made motions for judgment as in case of nonsuit. C. S., 567.　The court below overruled these motions, and in this we can see no error.

The defendants saw fit to try the case on the issues appearing in the record.　In fact, the defendant DeHart agreed to the issues and prayed for an additional one: "In apt time the defendant W. M. DeHart tendered the following issue, which he requested the court to submit to the jury, as follows: 'That the defendant W. M. DeHart hereby tenders the issues prepared and submitted to the court, and, in addition thereto, the following issue: Q. Is the plaintiff J. C. Queen entitled to bring, prosecute, and recover in this action as against the defendant W. M. DeHart?' "

First.　We consider the exceptions and assignments of error of W. M. DeHart.　It is well settled in this jurisdiction that a case will be reviewed on the same theory on which it was tried in the court below, and appellants may not have a case heard on a different theory from that on which it was tried.　We see no error in refusing the issue tendered by W. M. DeHart on the facts of this case.　We think there was sufficient competent evidence on the part of plaintiff to sustain the issues.

We do not think that the defendants' plea of *res judicata* can be sustained.　The note given by W. M. DeHart and T. C. Queen was endorsed and transferred to Ed. Floyd and then to R. E. Andrews, who instituted suit on same against W. M. DeHart, T. C. Queen, and J. C. Queen.　No service of summons was had upon T. C. Queen (brother of plaintiff J. C. Queen), who filed no answer.　W. M. DeHart set up the defense that the note was not to be binding on him unless signed by T. J. Ferguson, and won.　Ferguson was not a party to this suit.　The plaintiff alleged that he had to repay Andrews the amount which Andrews had paid for the note.　The present action is on the original contract.

If W. M. DeHart signed the note conditionally, he did not comply with his written contract—this was a breach of his written contract. He did not give "his note," but gave a conditional note, according to his version.　DeHart, although he admits getting plaintiff's property and refusing to pay him or return it, claims he is absolved because the contract called for a note, which, although he signed, the jury in the former case found he had only signed conditionally, and, thus, as to him, the note was void.　In other words, the execution and delivery by him to the plaintiff of a void note completely discharged his obligations under the contract.　This is his main defense.　We cannot agree with him. He also alleges that if the contract was binding he was only liable for one-third of the amount claimed.

In *Gillam v. Edmonson,* 154 N. C., 127 (130), we find: "The doctrine is that an estoppel of record will bind parties and privies as to matters in issue between them, but it does not conclude as to matters not involved in the issue, nor when they claim in a different right." *Price v. Edwards,* 178 N. C., 493.

We see no error in the court below refusing DeHart's prayer for special instructions on the ground of estoppel or *res judicata.* The plaintiff in the present action "claims in a different right." The action is bottomed on the original contract. Under the original contract all the conditions of the contract were complied with—entitling plaintiff to recover. He delivered to W. M. DeHart, T. C. Queen, and T. J. Ferguson the certificates of deposit and check totaling $3,901.10, this was accepted by the Corporation Commission and the bank reopened. Under this contract the defendants became indebted to the plaintiff for the amount. The giving of the note was a collateral matter for plaintiff's benefit, and if defendants had not given a note this would not relieve them of their liability on the contract. The fact that W. M. DeHart and J. C. Queen signed the note and T. J. Ferguson would not did not release any of the defendants from their liability to pay the indebtedness.

The defendants excepted and assigned error to the charge of the court below (which cannot be sustained), as follows: "Then another principle of law would apply. And that is, if you find by the greater weight of the evidence that at the time of the execution of the contract the plaintiff Queen turned over to the defendants the certificates of deposit and a check for his account that was subject to check, and that that was to be the consideration for the execution of this contract and the note, and you find that the defendants received it and used it for the purposes intended, and kept it, and that it has never been restored, that the certificates and the check have never been restored to the plaintiff J. C. Queen, then the law would raise in favor of the plaintiff a promise on the part of the defendants to pay him the amount the contract called for."

The court below, to sustain this portion of the charge, quoted from *Montgomery v. Lewis,* 187 N. C., 577 (579-80), the latter part of which we quote: "It must not be forgotten that the object of the present action is not to correct, or even to set aside or modify, the defendant's deed, or to obtain relief against its apparent effect. The deed remains intact; but the object is to recover the value of the lot, the retention of which by the defendant would constitute unearned benefit or 'unjust enrichment.' Williston says, 'The principle of justice which requires the return of money paid under a mistake requires that other benefits received under a similar mistake should likewise be restored.' Contracts, Vol. 3, sec. 1575. The suit has its foundation in the doctrine of *quasi*-contracts—obligations occupying a field between contract and tort.

They are imposed or created by law without regard to any agreement on the part of the party bound, because his promise is fictitious and his liability arises from implication of law, as when a person by wrongfully detaining or appropriating the property of another becomes liable to the owner for its reasonable value. 13 C. J., 233 (10); 6 R. C. L., 588 (7)." We think the charge consonant with the facts in the case.

The defendants excepted and assigned error to the following questions, which cannot be sustained: "Q. Prior to the time you entered suit, did Mr. DeHart ever come to see you and endeavor to settle this matter with you? Ans.: Yes, he did; I had a conference with Mr. DeHart after this note had been executed. Q. What did he say in regard to the paper? Ans.: Mr. DeHart came to my house, I don't remember the date exactly, and he said he had a check for one-third of this note and asked me if I would accept it on his payment, and I told him I would not. Q. Why didn't you accept the check? Ans.: Because I wouldn't release him." The defendant DeHart contends that this was incompetent, as it was an unaccepted offer of compromise.

In *Montgomery v. Lewis, supra,* at p. 578, it is said: "The defendant excepted to certain evidence on the ground that it embodied a rejected offer of compromise. It is true, if a person offer to compromise a demand he does not thereby necessarily admit that it is just, but if pending a compromise he makes a distinct admission of an independent fact, the admission may be received in evidence."

As a defense in this case, defendant DeHart contends that if he owes anything, it was only one-third, and the jury so found on an issue not objected to by him. If DeHart ever had a valid objection, he has waived it. He testified: "Cling Queen told me that Ferguson had not signed the note. When I found this out, I went to J. C. Queen's home; I went to see Candler and got $1,300.00, and went to see him about that note, and I wanted to pay one-third, and I told him that was what I had come for, but he wouldn't take it."

In *Shelton v. R. R.,* 193 N. C., 670 (674), it is said: "It is thoroughly established in this State that if incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been given in other parts of the examination without objection, the benefit of the exception is ordinarily lost. *Smith v. R. R.,* 163 N. C., 143; *Tillett v. R. R.,* 166 N. C., 515; *Beaver v. Fetter,* 176 N. C., 334; *Marshall v. Tel. Co.,* 181 N. C., 410."

Defendants W. M. DeHart, T. C. Queen and T. J. Ferguson were interested in the reopening of the bank, DeHart being a stockholder and director and Queen and Ferguson being stockholders. Defendant T. C.

Queen, who is a brother of plaintiff, did not deny liability on the contract or note. We see nothing in the contention of DeHart in reference to the court below having the jury retire and make clear a doubtful verdict.

In *Allen v. Yarborough,* 201 N. C., 568 (569), it is said: "Before a verdict is complete it must be accepted by the court for record. *S. v. Godwin,* 138 N. C., 582; *S. v. Bagley,* 158 N. C., 608; *S. v. Snipes,* 185 N. C., 743. This does not imply, however, that in accepting or rejecting a verdict the presiding judge may exercise unrestrained discretion. It is his duty to scrutinize a verdict with respect to its form and substance and to prevent a doubtful or insufficient finding from becoming a record of the court. *S. v. Bazemore,* 193 N. C., 336. But his power to accept or reject the jury's finding is restricted to the exercise of a limited legal discretion. He may direct the jury to reconsider their verdict if it is imperfect, informal, insensible, repugnant, or not responsive to the issues or indictment, or if it cannot sustain a judgment (citing authorities). *S. v. Arrington,* 7 N. C., 571, it was said, 'When a jury returns with an informal or insensible verdict, or one that is not responsive to the issues submitted, they may be directed by the court to reconsider; but not where the verdict is not of such description.' "

We think the charge did not impinge N. C. Code, 1935 (Michie), sec. 654.

Second. We consider the exceptions and assignments of error of T. J. Ferguson. What is said as to the liability of DeHart is applicable in some respects to Ferguson, and we will not repeat. Ferguson's plea savors of "confession and avoidance." He admits signing the contract sued on and his primary liability thereunder. He seeks to avoid this liability by reason of an alleged verbal agreement with plaintiff, releasing him from his obligation.

Ferguson testified, in part: "I signed the contract that was introduced in evidence with T. C. Queen and W. M. DeHart. We all signed it together at my dairy farm. Will DeHart, Mr. Coffey and Queen brought the contract to my place and called me out and we discussed it, and that was where I signed it, and DeHart turned over to me five shares of bank stock for signing that contract. I never had any contract with the bank: I signed the contract and right at the same time he turned over to me the bank stock. At the time of the signing of the contract we discussed it and each one said he would be liable for one-third of that contract, T. C. Queen, W. M. DeHart, and myself would all go one-third, and I signed the contract with that understanding. The contract calls for a note, but I never signed the note. Later, after signing the contract, I had a conversation with Mr. J. C. Queen about his releasing me from the contract. I turned over to him the five shares of bank stock and he agreed to release me from any liability on the contract. I turned

over the bank stock to him and he agreed to release me from the contract, and there was a further consideration that I was to go and borrow for Bob Jenkins a sufficient amount to reopen the bank." On the other hand, this was contradicted by plaintiff J. C. Queen.

The evidence was *pro* and *con.* The jury took plaintiff's version of what occurred—that Ferguson was never released from his contract. We do not think the charge complained of, exception and assignment of error 11, which deals with the 4th issue, by Ferguson, prejudicial from the pleadings and evidence and the theory on which the case was tried. In fact, Ferguson, in his answer, says: "Thereupon this answering defendant went to the plaintiff herein, carrying with him the five shares of stock that had theretofore been delivered to him by his codefendant, W. M. DeHart, and stated to the plaintiff herein that he would deliver said bank stock to the plaintiff if the plaintiff would release him from the contract theretofore signed and take the place of this answering defendant upon said contract and upon said note, and the plaintiff agreed thereto. . . . And the agreement to take said stock and release this answering defendant from said contract was made and entered into in the presence of this answering defendant's codefendant, T. C. Queen, who consented to said release. . . . This answering defendant went to the place of business of his codefendant, W. M. DeHart, and explained the whole transaction and release to him, to which he readily agreed." At least the charge complained of did not amount to prejudicial or reversible error.

Later, unobjected to, the court charged the jury on this aspect: "I have already explained to you what the breach of a contract is; in short, it is a failure to comply with the terms, agreements, and stipulations of a contract, and if Ferguson did not make the trade with Mr. Queen whereby he was released, as contended by him, then I understand he does not contend he has complied with the contract. I understand he admits he and the other defendants received the amount of the certificates and the checking deposit of the plaintiff, and that he has not been restored, and if you find those to be the facts, and answer the 4th issue 'No,' then I charge you that would be a breach of the contract on the part of Mr. Ferguson, and if you find by the greater weight of the evidence it would be your duty to answer the 7th issue 'Yes.' If you fail to so find it would be your duty to answer that issue 'No.' "

We think that the charge as to the greater weight of the evidence on the different issues is correct. The charge of the able and learned judge in the court below comprised 29 pages. Taking same as a whole, if there was error, it was harmless. On the whole record we see no prejudicial or reversible error, and think that substantial justice has been had between the parties to the litigation.

No error.